Counsel, you may proceed. Thank you, Your Honor. May it please the Court, my name is John Egan here on behalf of Misty Cumbie. This case is about what it means to be paid the minimum wage. Counsel, could I ask you to speak just a little louder or maybe a little closer to the mic? Of course. This case is about what it means to be paid the minimum wage. When an employer writes a check for the minimum wage but requires the employee to pay for other business expenses of that employer, that employee has not received the minimum wage. That's the free and clear regulation that the Department promulgated long ago and to which they've adhered since then. The free and clear regulation 29 CFR 531.35 prohibits kickbacks whether they favor the employer directly or indirectly and whether in cash or other than cash. Mr. Egan, don't we have a threshold problem as to whether or not the restaurant in this case elected to claim tip credit? Well, I think that that's somewhat of a semantic argument, Your Honor. I think they can functionally take a tip credit without officially claiming it. There's no form that they fill out to claim a tip credit. But if they take hold of, take dominion over or control tips that belong to the employee, then they're taking a tip credit. Is there any case law whatsoever that supports that particular position? I thought these rules were fairly precise and fairly categorical. Either you claim the tip credit or you don't. There is no case that interprets it one way or the other on whether or not an employer claims the tip credit. But you're not suggesting that this employer did not pay more than the minimum wage without having anything to do with tips, are you? What I'm saying is... Are you suggesting that this employer paid less than the minimum wage, not including tips? No. Okay. So if you're not suggesting that the employer paid less than the minimum wage, not including tips, then aren't we a matter of statutory interpretation whether any of the other clauses therein, Statute 203M, even apply? I don't think that, and I think we addressed this in our briefs, I don't think that the focus here is on Section 203M. 203M defines what wages are, and minimum wages have to be paid. And as I began my remarks, I think what this case is more about is what does it mean to pay someone the minimum wage. If you pay them, but make them pay you back some other money, in other words, if you give with one hand and take with the other, then that minimum wage has not been paid. What case do we have on that? I think that there's... I mean, the bottom line is, it seems to me that where you're going is you want me to go into the 29 CFR 531.35, but my worry is that I've got to read a statute to determine whether there is any tip credit or any other suggestion. As I understand the statute, it says an employer has to pay the minimum wage, and he can pay the minimum wage in many ways, but one of the ways is to pay it. And they paid it, and that's Clause 1. And this is a tipped employee, and then if he doesn't pay it, then we go to the other clauses to suggest how he might have paid the minimum wage otherwise. And in this particular matter, he didn't need to go to the other clauses. He'd already paid it. So why are they applicable? What case says they're applicable? If you look at the Fourth Circuit case, the Marriott case, it says that if an employer requires employees to use any part of their tips to pay their own minimum wage, directly or indirectly, that's not the minimum wage. He said that it interprets the 1974 amendments of Section 3M to say that any other interpretation of that would stand those amendments on its head. In other words, limiting employers to only half of the minimum wage as a tip credit, by necessity, Congress must have intended that you can't go more than half by supposedly disclaiming your right to a tip credit. Well, but it seems to me that Marriott's nothing more than another on the same case called Ussery, or I call it Ussery, Ussery has its own idea to it, versus Emerson. And this is where, both those cases, somebody took all the tips and used them as the minimum wage, and then only allowed the employee to keep tips after they had taken all their tips to pay the minimum wage. Well, and that's what... That isn't what happened here. In here, these employees received a wage and it was above the minimum wage, even in Oregon, which is higher than the national. So they had their minimum wage. And at that point, the employer said, I'm taking all the tips you get since I pay you the minimum wage, and the law is not applicable. Well, I think that, again, if you go with the Fourth Circuit's view of this, that's what we would call 100 percent tip credit. If you take more than the minimum wage in tips and give back the minimum wage, then you haven't paid the minimum wage. But you're getting the minimum wage, more than the minimum wage. Well, that's... To begin with, and the tips are in excess over that. They're getting a minimum income. In other words, their total wage received, plus tips, exceeds the minimum wage. But that's their minimum income. But in this case, it's conceded, is it not, that the company is paying the minimum wage plus whatever tips come in, which, of course, they ask to be reallocated. No. I don't think we concede that. I think when you look at whether it's been paid or not, that's what we're looking at. You can't write someone a check and then take the same amount in cash back. That hasn't been — then no money has been paid at all. That's the position. Well, they didn't take back. They simply paid the floor, we'll call that, the minimum. Okay. And anything about that, I don't know why the government is concerned about it, and I don't know why the wage and hour laws pertain. Well, the tips don't belong to the employer. The tips belong to — Who says? What statute says that? No statute says it, but the Fourth Circuit has said, for example — Well, hasn't the Supreme Court said in Jacksonville that any arrangement which would require the sharing of tips is perfectly legal? No. In Jacksonville, the Supreme Court said that tips presumptively belong to the server unless there's a contract between the employer and the employer. Which we have here, do we not? Right. Which the 1974 amendments to the FLSA presumptively overruled because — and this is the — Any case — is there any case out there that says Jacksonville has been overruled? Not overruled. There are cases that have distinguished it, but only based on the union aspects of that case. But if you look at the Fourth Circuit's interpretation, it has to — it can't be that way anymore if the 1974 amendments are to mean anything. In other words, the 1966 and 74 amendments limiting the tip credit to 50 percent mean nothing if you allow an employer to take all of an employee's tips. That's 100 percent tip credit, and Congress would not have created that ridiculous situation where if you elect a tip credit, you've now penalized yourself and can no longer — Thank you, Counselor. Your time has expired. We'll hear from the Department of Labor. May it please the Court, my name is Maria Van Buren, representing the Secretary of Labor. If I could address the questions put to Appellant's Counsel. First of all, this idea that it's clear from the plain language of Section 3M of the is taken. Of course, we all know what tips are, they're a gift or a gratuity left for the server by the customer in appreciation for the service provided. Congress created a tip credit provision in the FLSA that permits employers to use a portion of their employees' tips against their minimum wage obligation. To meet the minimum wage standard. Yes. To meet the floor. To meet the floor. But here, in this case, the floor has been met or exceeded without regard to the tips, has it not? Well, that's — that's true that the minimum wage has been paid in cash. But if I could just go back for a moment to my first part of the argument, because I think it sets up the second part of the argument, and that if Congress — But it seems to me, just stopping right there, that's the end of the story. I don't quite understand how — how — we're trying to sort of — undo the cash portion that the employer has already paid out and not — and not recognize it. It's because, Your Honor, the Secretary's position has been since the 74 amendments that tips are the property of the employee. Congress would not have had to — have acted to give employers the ability to take — All right, well, let me ask you, if you say the tips are the property of the employee, suppose the employer says the tips go into a pot and all of the waitstaff, will share. Mm-hmm. Does the employer — does the — under the DOL approach, does that mean that the rule's been violated? This is all of the employees who customarily and regularly receive tips, i.e., the waitstaff, you're saying, Your Honor. I said waitstaff. Pardon? That would be okay. All right, does it — suppose it also — the employer says, well, the busboys, they — they do all of this preliminary work. They ought to be sharing the tips. Is that okay? It's actually something that Congress specifically said in the 74 Senate report to the 1974 amendments of the Act. They made a distinction between employees who customarily and regularly receive tips and said those are valid tip pools and that's okay, and that's right in Section 3M, as opposed to employees who do not customarily and regularly receive tips. Okay, I understand all of that. What I'm asking you is specifically, what do you do with the busboys? Busboys are considered to be those employees who can participate in a valid tip pool. They are tipped employees. They are tipped employees? Busboys are, yes, Your Honor. Okay. As opposed to — What about — what about the kitchen staff? What about the — the cooks? The Senate report in 74 specifically spoke to chefs and said they are not employees who customarily and regularly receive tips. And what the Senate report was saying was Congress was acknowledging — because there's notice and that all tips are retained. And then Congress said, except that, nothing in 3M is intended to prohibit this established practice of tip pooling among employees who customarily and regularly receive tips. And that's right in that Senate report language. They wanted to preserve the practice. But the only way — It seems to me that the — that your entire argument is premised on the notion that Jacksonville is no longer good law. Well, Jacksonville said — right in Jacksonville, it says, absent statutory interference, these tip-sharing agreements between employers and employees are presumed to be valid. And the Secretary's position is that, 74, that was a statutory interference. But, you know, Congress said, after this point in time, tips are the property of the employee. The only way in which an employee's tips can be used is if the employees either are — are not satisfied with the fact that they're not using a valid tip pool. Well, your — your argument really is suggesting that, based on the Senate report, which I've got to read and make sure all the Senators agreed with that, that that report has validity over the statutes that we have here in front of us, aren't you? Well — Because I don't find anything in 203M which suggests what you've said. Well — In fact, 203M is pretty straight. It starts out with, employer must pay at least the federal minimum wage, which happened here. And it says, if they don't pay that, they can use tips. But they did in this particular instance, so I'm having a tough time figuring out how I go on to these other clauses which have nothing to do with whether the employee at least paid the federal wage, because he did. And you're right, Your Honor. 3M is speaking to when a tip credit is taken. But it's been the Secretary's position right after the 74 amendments, when she came out and she said, Section 3M sets out certain requirements for the use of an employee's tips, which are true even in the absence of a tip credit being taken. What deference do I owe the Secretary? Skidmore deference, Your Honor. We are interpreting the statute as interpreted through our longstanding opinion letters and through this brief. And so if I say the Secretary is contra the statute and given them only Skidmore deference, then I don't have to give any consideration to the Secretary's opinion? That's true, Your Honor. But again, the Secretary is not interpreting the plain language of 3M. Rather, she's filling in a gap, which she believes is true to the meaning of 3M as it was implemented in 74. Because in 74, when Congress gave employers a partial ability to use employees' tips, what it was saying is, these are the only ways in which you can use the tips. And it makes no sense. And this is what the Ussery decision and the Dunnevin decision and the Doty v. Elias, what they were saying would stand 3M on its head would be if an employer said, I don't want to take 50% at the time it was in 74. I don't want to take 50% of an employee's tips. I'm not going to take the tip credit. I'd rather just take 100% of the employee's tips and use those toward my minimum wage. Nobody's taking 100% of the employee's tips here. And this is where the free and clear principle comes in. Because what the Secretary is saying is, even if the cash wage is paid with the one hand, and then you're taking the employee's tips with the other, Congress has made a determination that those tips are the property of the employee. And in our 89 opinion letter in particular — Well, just a minute. Congress didn't say they're always the tips. They're always the property of the employee. In fact, it seems to me that they're the property of the employee in some instances, but in other instances where we really have an employment agreement suggesting that now they become the property of the employer, now the tips are not the property of the employee at all. And now we have an agreement that says they're not the property of the employee. And I stand out of time, but as you know from our brief, the Secretary came out in 74 and said, our 67 regulations were superseded by the 74 amendments and are no longer valid. Thank you so much for your time. Thank you, Counsel. May it please the Court. I'm Eric Lindenauer. I'm here today representing the Wu defendants. The solely or purely legal issue before you today is whether the Fair Labor Standards Act prohibits requiring a restaurant server who's paid a completely separate minimum wage from then contributing her tips into a tip pool that includes kitchen staff. There are five sources of law. On that particular point, is management sharing in these tips in any way? No, Your Honor. The owner of the restaurant? No, Your Honor. So it's just the wait staff, the bus boys, the bus staff, and the kitchen help? Correct. That's all? Yeah. And I'm not even sure there was bus staff in this case, which wouldn't matter under the Secretary's position. There are five sources of law that you're cited to determine this matter. First, the language of the act, case law, legislative history, administrative rules promulgated by the Department of Labor in 1967, and some DOL opinion letters. I'm not going to belabor the point the Court's already made about the statute, but that's where I think this case starts and ends. It is plain on its face in terms of Section 3M, which is the only provision addressing tips. It says the tip credit provision shall not apply. In other words, you don't get the benefit of tips in computing minimum wage unless tip pools are confined to employees who customarily and usually receive tips. What was the purpose of the 74 amendments to the statute? The purpose of the 74 amendments, I believe, was to restrict the ability to – well, there may have been many purposes, but in terms of Section 3M, was to limit it to the ability of employees who customarily receive tips to be able to get a tip on a minimum wage. And it moved from a 50 percent limitation on tip credit to a situation in which you still had the 50 percent limit, but you also could not create a tip pool unless the – well, first of all, you had to inform the employees, there had to be a clear understanding that this was going to happen to them, not a problem here, and I've been alleged that that was an issue. And second, the tip pool was restricted to employees who customarily receive tips. Now, would you ask me to go back to Section 3M and say, well, we're not going to do   because there's some other more salient points. We're now told by the plaintiff that they're really relying on Section 6 and the companion regulations, the minimum wage provision of the statute, because 3M really doesn't work for them based on a plain reading. Well, Section 6, Your Honors, hasn't been functionally amended since 1938. It is the section that simply says you shall not pay less than, and it's been amended many times to define what less than is in quantity, in dollar amount, as inflations occurred, but the basic structure's been the same. And in 1942, the Supreme Court in Jacksonville Terminal said that doesn't prohibit requiring, as long as they're informed, employees to even cede over their tips to the employer. It doesn't restrict how tips are distributed or used. So Jacksonville Terminal is controlling. Well, what about the specific comment made by opposing counsel that Jacksonville in effect has been overruled by the 74 policy? Jacksonville was a Section 6 case. They're two separate sections, and I think they have to be read separately. You know, you can't say 3M doesn't really work for us, but it implicitly overruled the proper interpretation of Section 6. I mean, how can that be? Section 6 has been left alone. Now, none of the cases relied on the cases to address the situation which we have here, where the minimum wage was paid separately, has ever held that there's been a violation. They've held to the contrary. We have Playtech coming out of Pennsylvania and affirmed by the Third Circuit, Cooper in this district in Oregon, and the Chan case in New York. And none of the cases cited by the Plaintiff or the Department of Labor involved a situation where there was held to be a violation of the Act, involved a situation like this where there was a payment of a separate minimum wage. In fact, if you look at the Circuit Court of Appeals decisions, none of them have actually come out and said one cannot take the employee's tips. I mean, we don't have to carry that burden, but if you read them carefully, they don't go so far. They mostly hinge on lack of an agreement or understanding that the employees had to turn over tips. And I think a key case here is the Fifth Circuit's Barcelona case. If you read the footnote, and that was the only case that really dealt with a turnover of tips to the employer, as opposed to the other situations where the employees were just keeping their tips and not getting anything extra from the employer. That was the fact pattern in the other circuit cases. In Barcelona, you actually have in the Fifth Circuit a requirement for turnover. And Barcelona, in footnote 2, says we're not even going to – first of all, they cite Jacksonville as perfectly good law, and in footnote 2 they say we're not even going to decide whether this would be prohibited by the Act because the problem here is the employees didn't have an understanding. They didn't – they weren't told they had to do this. When we're in this kind of a situation, your best argument, I guess, is that the statute is clear and unambiguous, and therefore we don't have to look at any other interpretation thereof. If, in fact, the statute is not so clear and unambiguous, don't we need to give skidmore deference to the Secretary? The Secretary would get skidmore deference. And let me turn to their position now, because I don't want to run out of time before I address that and explain why even under skidmore deference it's not entitled to carry the day, because it only gets weight if it's considered and well-reasoned, considered with earlier and later pronouncements, and otherwise persuasive. First of all, there's a problem in that they don't address this issue with section 3M of the statute. Secondly, it's inconsistent with their existing notice and comment regulations. And here's what I really would like to focus the Court's attention on. They want to focus on the free and clear regulation and say, you know, this is a kickback in violation of free and clear. Well, free and clear is part of a package of regulations that was last touched in 1967. It was actually has earlier origins, but it's reenacted in 67 as a part of a package of regulations that allowed employers to take all of the tips, and said that didn't run afoul of the tip credit provision enacted in 1966. So what they're in essence saying is the free and clear regulation meant one thing then and another thing now. How can that be? And how can that be without another notice and comment rulemaking that says, you know, if this regulation now applies to this situation, it's part of a package? The cases they cite in this opinion, this 1989 opinion 536, which is the only DOL opinion that's on point, are not on point. For instance, they cite Barcelona, and I don't have time to go back into why Barcelona is not analogous, but it doesn't fit. They also say in that same opinion that there's this 15 percent reasonableness limitation on contributions to tip pools. Well, they've now admitted in their new proposed regulation published in the Federal Register that there was never any statutory support for that, and that that is wrong, and that that's a wrong position under the Fair Labor Standards Act. And lastly, they haven't been consistent. And we've attached to our brief a November 4, 1997, letter opinion where they indicate that if you allow tip sharing or require tip sharing with traditionally non-tipped employees, the consequence is loss of the ability to take tip credit, not – it's not a flat-out violation. You lose your ability to take tip credit. And you know what they cite for that? They actually cite the legislative history of the 74 Amendment, and that's what that legislative history – and we've, you know, quoted the part in our brief – says if you allow this sort of – or require this sort of tip pooling with traditionally non-tipped employees, you lose the ability to take tip credit. That's the consequence. And that's what they told restaurant owners in 1997 in an opinion letter. As I understand it, there is nothing in the regulations to support the idea that tip pools cannot exceed a customary and reasonable percentage of the employee's tips. Is that true? That is absolutely correct. And taking you very briefly through the regulations themselves, there's – the regulations that address it are 531.54 on tip pooling. And it says – it essentially contemplates arrangements where tips are going to be redistributed and says what each employee gets personally is counted as part of their wage. There's 531.55 that says the 50 percent limit on tip credit – the statute's been changed, so now it's the 213-plus structure – but the 50 percent tip credit provision or limit doesn't apply where the employment agreement requires turnover of tips. In other words, under their regulations, this package of regulations, an employer could take all the tips. 531.59 says where the employment agreement requires the turnover of tips, you have to pay the full minimum wage. That's what my client did. They paid the full minimum wage unconditionally and separately. You have the free and clear regulation. This situation wasn't a kickback then, and it describes a situation that's – you know, when it illustrates kickback, it's an employee who gets the minimum wage but then has to go out and buy tools to benefit the employer or the job. Well, that employee, for their however many hours of work, doesn't go home at the end of the day with at least the minimum wage. What they've really netted is minimum wage less what they paid for the tools. It's – that's not alleged to be the case here. It's not the case here. These employees always got minimum wage from a separate source, not including tips, no matter what. So that's a quick tour through the regulations as they exist. Were any arguments made before Magistrate Judge Papik by the appellants here that were not made? In other words, did he receive the same arguments that we're receiving and decide the case based on the same issues presented here? Identical, Your Honor. And do you find any fault with Judge Papik's rather detailed ruling? No. There is maybe one part that's a little unclear, but I think I know what he was saying. Explain. The one part that was perhaps unclear is the part that says, well, how could this be, because – it's hard for me to rephrase eloquently, but he essentially said, well, Section 3M contemplates that you're not going to get to keep all your tips, so what they're saying can't be the case. And I think what he was talking about there was this interplay between Section 3M and Section 6, because both sections were issued in what the plaintiffs argued. And, you know, how can you violate – not only is Section 6 not changed, but how can you violate Section 6 if the employee doesn't get all their tips, because under 3M, even with a valid tip pool, you don't get all your tips. You have to share them. So I think that's what the judge was saying. I heard the criticism of what he said in the briefs, and I'm taking the liberty of interpreting what he said. So in conclusion, I really don't have a lot more to tell the Court than what I've already told them. I don't think this case ever gets anywhere past a plain reading of the statute, which simply in Section 3M says tip credit doesn't apply if you include kitchen staff, arguably, but doesn't prohibit it. That's not what the statute does. Section 6 hasn't been amended functionally since 1938. Jacksonville Terminal is a controlling piece of law still, and we don't need to get beyond the statute. But even if one does, this notion that the free and clear regulation now means something different than it did when it was enacted as part of a package or continued as part of a package of the existing regulations doesn't carry the day, and the DOL has certainly not been consistent in the position they now advocate today. So unless the Court has further questions, I thank you very much for your time. Roberts. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument in the last case for the morning, Seavers v. Department of Labor and Alaska Airlines.
judges: Wolle, O'scannlain, Smith M.